Next case for argument is 23-1359 Kroy IP Holdings v. Upholm. Mr. Richter, whenever you're ready. Thank you, Your Honors. My name is Paul Richter. Excuse me. I don't know why. I'm here from Devon Law Firm representing the appellant Kroy IP Holdings. This is a case with a rather long procedural history, which is why we are here today, given the district court's entry of a motion to dismiss, dismissing the claims, all claims for collateral estoppel. Are you familiar with the case by our court, a recent decision in Parker Vision v. Qualcomm? I don't believe I'm familiar with that case. If you read it, you might read it the same way, at least until I'm told otherwise I read it, which is, you win.  Yes, you're sorry you missed it. Thank you, Your Honor. I'm also sorry that I missed the opportunity to have you create a new precedent, which is what we were asking for. Well, your name personally wouldn't go on it, so. Anyway, Parker Vision says one set of claims from, there's one patent, OK, one set of claims gets held unpatentable by the board. We affirm another set of claims in district court. Question is, even if they are materially identical, or materially indistinguishable under the Ohio willow, does collateral estoppel apply? The court said, no, it doesn't, because the premise, namely that even the board adjudicated unpatentable claims were not adjudicated under a clear and convincing evidence standard. So you don't have the jumping off point for collateral estoppel in district court, where it's a clear and convincing evidence standard. That's your argument here, right? That's precisely our argument, that there are two lines of cases. Of course, the district court and the magistrate judge did not have the benefit of Parker Vision, so it put together inferences drawn from other precedent, but precedent that did not involve this situation. It's just a month old. I miss it. I've been surviving hurricanes in St. Petersburg. Can I ask you a complete aside question, which is, how did you come to add 115 additional claims in re-exam? I was not the re-examination lawyer, and that was in 2015. I do not know exactly, but certainly re-exam, as you well know, you're permitted to present additional claims. Is there a 101 in validity or ineligibility challenge pending counterclaim in this case? I was not the trial attorney down below. I believe there was that issue was discussed. Yes, I think it is. I don't know if there's a motion pending, but it certainly was raised. So, I'm not sure what I should do in this instance. Because it sounds like... While you're ahead, I have a question. You'll have to talk to me if your friend uses Judge Toronto and others of the notion that it's counterproductive. Okay, well then, I will take the victory and sit down, notwithstanding that I was excited to discuss and hope that you would... Provisional victory. Provisional victory, yes. Okay. Thank you. Thank you. Let's hear from the other side. Good morning, Your Honors. Thomas Dustin on behalf of the Appellee Group, Ron. I started in a hole, apparently. Well, were you aware of Parker vision? I mean, presumably the other side... It was recently brought to my attention. I have a couple of comments to make about that. Let me start, though, with, I think, a more fundamental problem here.    And that is, the arguments advanced with respect to this burden of proof issue were never presented below. They were never preserved for appeal to this body. In fact, more than not preserved, these very arguments that are presented to Your Honors by Croy were disavowed during the district court proceeding. What do you mean, were not preserved? Were disavowed? I mean, the law is what the law is. And the board has a certain standard. And the district courts have another standard. So, what more do we need than that? Well, Your Honor, it was clearly the case that there were cases out there commenting on whether or not collateral estoppel applied in circumstances where the burdens of proof were different. It was clearly possible for Croy to have mounted that defense in the district court. But in response to Judge Burke's specific question to Counsel for Croy, and this is on page 9 of the memorandum opinion from Judge Burke at footnote 6, Judge Burke said to Counsel for Croy, you are not making the argument, are you, that I cannot apply collateral estoppel to different claims than were addressed in the IPR. And the response of Counsel at that time was, no, Your Honor, we're not making that argument. In fact, the argument they articulated to Judge Burke was not that the burdens of proof prevented the application of collateral estoppel, but instead that collateral estoppel could be properly applied to claims not addressed in the IPR, provided Croy could show those claims to be materially different. That's what they told Judge Burke. And it wasn't until they arrived at this court that they made this argument about the difference in burdens and the fact that collateral estoppel cannot arise from a PTAB proceeding and be applied in a district court proceeding. That argument was first advanced in this court, and it wasn't just the fact that they didn't make it. They affirmatively said they were not making that argument below. So I think this is an inappropriate vehicle, this particular case, to double down on the Parker vision decision, which, by the way, Your Honor, let me also address Parker vision. I guess I'm just remembering, I hope correctly, that the rule of what an appellate court can address quite readily is an issue that was either argued or decided below. And Judge Burke, Judge Burke, clearly said, put together these two cases and said, yes, we can actually do the materially indistinguishable analysis even when the first decision on which issue preclusion is resting came from the board and we're in district court. So it seems to me he decided the question even if he was not asked to. You're saying as a subsidiary, unspoken. No, it's not unspoken. He said, I infer from these two lines of cases that the rule should be is we put these things together and you have an invalidated claim before the board and a materially indistinguishable claim in district court and so issue preclusion applies. He didn't say, I will just assume this. He said, I'm actually adopting this. I agree with you, Your Honor. But the point I'm making is that when questioned as to their position, Croy's counsel urged the court, advocated to the court, that the court was empowered to make these decisions that they're now arguing that were error to make by the court. My point is that they almost baited Judge Burke into this position. But let me address Parker vision since that's what is the jumping off point for all of us. So Parker vision did not deal with the circumstances that are present in this case. Parker vision dealt with an issue where the IPR concluded with certain claims being found unpatentable and other claims being found patentable. And the effort by the petitioner in that case to apply collateral estoppel was to apply collateral estoppel from the claims on which they succeeded to the claims on which they lost. These were not unadjudicated claims in the context of Ohio Willow, for example, materially indifferent, materially similar claims which weren't adjudicated below. These were adjudicated claims at Parker vision. Those claims were claims that the petitioner lost on. They were unsuccessful in convincing the patent office that those claims were unpatentable. Unsuccessful in convincing the patent office that those claims were unpatentable based on the same prior art combinations that they had succeeded on with respect to other claims in which they argued gave rise to collateral estoppel. And what was the standard that the PTO was applying that the board applied in making that decision? I'm not sure I follow, Your Honor. What was the standard, the evidentiary standard that was applied below? It would be preponderance of the evidence, Your Honor. The IPR proceeding, that is the standard. But my point... Isn't that the issue here, though? A difference in the standard that's applied? Well, I don't think that's entirely correct, Your Honor, if we're relying on Parker vision and determining what Parker vision actually found. Parker vision found that you were attempting to apply collateral estoppel to adjudicated claims, claims where the board had faced that same prior art argument and concluded that those claims were indeed patentable over that combination. That's not this situation. By definition, the board necessarily found that those groups of claims were materially different... You're saying the claims in this instance were not adjudicated. That's correct, Your Honor. The board has not commented on the patentability of the claims that are being asserted now by CROI. It commented on claims that are virtually identical to those claims. The burden of proof, Your Honor, is not independent of the decisions of the patent office. The burden of proof is a consequence of those decisions. When the board has indicated that subject matter of this scope is invalid, when the board has indicated the patent office has declared claims of this scope to be unpatentable, the presumption that CROI seeks to apply in the district court that is based on the views of the patent office, that arises because the patent office has declared claims of this scope to be patentable, gives rise to this presumption. That presumption disappears. The basis for that presumption evaporates. What ends up happening, if we follow this logic, is we will find ourselves in district courts with district court judges called upon to enforce claims of a scope that the patent office has declared are not worthy of patent protection. Not only to enforce those claims against the public, but to raise the bar to the public who might hope to defend against those claims. This is all because the patent office, the presumption rises because the patent office has determined this scope to be patentable. But that's not the case here. This scope was clearly presented to the patent office, and the patent office declared claims of that scope to be unpatentable. Those are the claims that are now being asserted, Your Honor, and said to be worthy of a presumption of validity, and said to be worthy of a higher burden of proof. That was not the Parker Vision situation. Parker Vision clearly presented these claims to the board. With the prior art combination, and the board concluded that those claims were not worthy of patent protection. That's not the situation. The board has concluded these claims are not worthy of patent protection, and Croy should be stopped from asserting a presumption of validity for those claims, and stopped from demanding a higher burden of proof for those claims, when those claims are essentially no different than the claims that were invalidated by the patent office. I mean, that's the rub of it, Your Honor, is this presumption arises from the decisions of the patent office. And we don't have any mystery about the decisions of the patent office in this particular instance. The patent office has made clear its position that claims of this scope are not patentable. Parker Vision was a very different situation. Parker Vision, the claims were specifically addressed by the board. And the board concluded that those claims were patentable over the prior art combination. And the board necessarily concluded that those claims were different materially from a patentability standpoint from the claims that supposedly gave rise to collateral stop. That case law is clear. If the claims are different materially in patentability from those that were invalidated, collateral stop doesn't arise. Now, in X, Y, this court ruled that collateral stop arose from a PTAB decision. And it was faced with exactly this argument. Judge Newman argued in dissent that there could be no collateral stop arising from a PTAB decision if the burdens of proof in the district court and in the PTAB were different. Judge Newman put that issue squarely before the majority of the X, Y decision. And the majority said, no, we believe that collateral stop arises from the decision of the PTAB. Now, they could have premised that decision. I'm sorry. Just to be clear, X, Y involve the same claims, right? That is true, Your Honor. But it wasn't the basis of the decision that the claims were identified. Right. It requires just understanding X, Y to be about the fact that once the board, after being affirmed, has held particular claims unpatentable, that as a ministerial matter, they then will be canceled. So we're just attributing the cancellation of those claims. And the cancellation certainly has collateral stop. Well, with all due respect, Your Honor, I don't believe that was the reasoning of X, Y. It wasn't the reasoning. I said that's how it has now come to be read, I think, fairly and almost necessarily. Well, I'm not sure that's necessarily a fair reading of X, Y, Your Honor, because the court in X, Y made their decision some years after the Fresenius decision. And the Fresenius decision, which was parroted by Judge Newman in her dissent when she talked about how she objected to the majority's efforts to what she called moot the district court proceedings, was based on the fact that claims that are found invalid by the PTAB are canceled or on their way to cancellation, and you cannot then premise an enforceable action on those claims. But the X, Y majority had that avenue available to it but did not take it. They specifically premised their decision on collateral stop, which is issue preclusion. It's not res judicata. It's not claim preclusion. It's issue preclusion. It basically says if we arrived at certain determinations essential to the judgment of the invalidity of these claims, those determinations will have collateral estoppel effect in all pending and future proceedings, not specific just to these claims. If they had meant specific to these claims, the majority could have said something other than collateral estoppel. And collateral estoppel, X, Y, has been read, as I've just articulated it, by the district courts since it was issued. It has been applied repeatedly to invalidate claims whose scope is not materially different from those that were adjudicated by the PTAB or adjudicated previously. I will use the shorthand. In a board-board situation, not a board-court situation. Well, I'm speaking of district court decisions, Your Honor. Two district court decisions, right? But Park Revision is actually precedential. I understand, Your Honor, but Park Revision didn't rest on the invalidate, no, sorry, the board's earlier determination to find that, or earlier finding that Qualcomm in that situation had failed to meet a preponderance standard as did these claims. It said what it rejected was the proposition that Qualcomm doesn't get to challenge these claims because other claims were already held unpatentable by the board, right? I think the language is a little bit more specific than that, Your Honor. Because at one point in the decision, Judge Stark makes clear that we are not here dealing with claims that have not been found unpatentable, right? We are, in Park Revision, they had claims that were found not to be unpatentable. We don't have that situation in CROI. These claims have not been addressed by the board other than in terms of the board having addressed claims that are essentially the same as the claims that are now being asserted. And in that instance, far from finding those claims not unpatentable, the board found these claims unpatentable. So this notion that we indulge a presumption of validity based upon the actions of the PTAB in allowing claims and the fact that we indulge that presumption because we believe the PTAB has made a determination that these claims are of patentable scope, that's exactly 180 degrees opposite to our current situation. We would be, if we follow CROI's logic, in a situation where we are calling upon the federal district courts to enforce patents that the patent office has declared are of unpatentable scope and we are calling upon the federal circuits or the district courts to enforce those claims in a supercharged environment where the defendants who seek to defend against those claims have now an even higher burden of proof, notwithstanding the views of the patent office, as to the patentability of that scope. And I'll say one other thing about Parker vision. And when you say patentability of that scope, you're folding in the particular claims that were adjudicated and things of indistinguishable scope. Unless the plaintiff can show, the patentee can show, that the claims having different language or some other differences which are not word for word identical, unless the patentee can show that that absence of complete identity matters to patentability, they are effectively the same scope as what's been determined by the patent office to be unpatentable. Now, Parker vision, I will also point out, Parker vision was a, this particular language in Parker vision, was with respect to an unappealed and unappealable order. This came up, this particular statement in Parker vision, concerns a motion to exclude expert testimony on a validity issue, which was nowhere part of the judgment that rose to this court. Moreover, a decision on a Dawbert motion pre-trial is not appealable to begin with. Yet, Judge Stark, with all due respect, offered more or less an advisory opinion. But that's a proper thing to do when a matter is going back. It's, my point, I think, Your Honor, is this issue has not been addressed, I think, in the full and complete circumstances that one would want to make such a significant decision. And I think it should be, Parker vision should be restricted to its facts, which is that those specific claims against which collateral estoppel was asserted were not absent from the IPR. They were found specifically by the board to be patentable over the prior art combination. And I think the fact is that this presumption and the follow-on burden of proof differences stem from whether or not the patent office has viewed this subject matter to be patentable, Your Honor. Thank you. Your Honor, I think I had three minutes for rebuttal. Well, you've got 11 minutes remaining because, remember, you short-circuited. Thank you. I appreciate that. Unfortunately, you continue to be at disadvantage for not having recognized Parker vision. So try to rebut if you have any rebuttal. Sure. What I'd like to rebut are just some of the factual contentions of counsel. I think this is quite clear from our briefs, but the newly asserted claims, which were collaterally estopped by the district court's decision, were never before the PTAB. So there was never an opportunity for the PTAB to say one way or the other, they're patentable, they're unpatentable. The problem was, and the mischief caused by the district court's test, is the melding of the two lines, the XY line and the Ohio Willowood, enabled her to construct hypothetical claims from the claims that were at issue and were invalidated by the PTAB. What about the footnote that your friend calls out that says that you, before Judge Burke, said there's no dispute about the different proceedings? About the... Different proceedings. He called out Judge Burke's footnote in Judge Burke's opinion where he talked about footnote six in appendix nine. So that... I was not at the hearing, I didn't argue it, but I don't think that an inelegant response to the judge's question at the hearing waives a challenge to the judge's test, which we have challenged through our briefs. The judge still came up with a test of collateral estoppel that we think is inappropriate and contrary to the law. And so there's no waiver of that challenge to that test, no more than there is a waiver to the manner in which the judge applied it by the construction of the hypothetical claims. For example, claim 107 is one of the collaterally estoppelly asserted claims. The judge was unable to find all of the elements or an equivalent element in claim 107 in claim one, which she matched it up to, so she turned to claim 12, which was also invalidated for the electronic card limitation. And then she put that element into claim one and said, I'm going to combine that, and this is a claim that would have been invalidated had it been one that was in front of the PTAB. And then based on that hypothetical invalidation, she said that I'm collaterally estopping claim 107, notwithstanding that there is no claim that lines up with each of the elements of claim 107. So you're arguing that it is materially distinct. Yes, 100%. So part of our brief is devoted to even if we were wrong, even if there was no Parker vision case, even if you rejected our arguments that collateral estoppel shouldn't apply, where the PTAB used the preponderance of the evidence standard to invalidate a certain set of claims, and then completely different claims in a district court, which should be entitled to a clear and convincing standard, were never addressed by the PTAB and should not be held to collateral estoppel. But even if the judge was correct, and that should be the test, we argue that, particularly for claims 91 to 93, 103, 107, and 108 to 110, are materially different because with respect to those claims, in each instance, the judge was unable even to match up the elements of those claims with the elements of a complete claim that was invalidated by the PTAB. So instead, she took bits and pieces for various claims. For claim 91, she used parts of claim 7 and parts of claim 87 that were invalidated. I'm feeling a little awkward because the other side does not get a rebuttal to these arguments that were not made in the initial argument, which is not your fault. We take your argument. But on the fundamental point, I don't remember whether Red said this, it probably did, but isn't there an obvious concern, never mind what one would do with the concern, about forcing every defendant who files an IPR petition to include all of the claims in the patent? How does, because otherwise, even if the board, the problem here is that the petitioner, the defendant here, the petitioner in the IPR, was selective about the claims it was going to ask the board to consider, and that left, in your somewhat surprising situation, 100 other claims or something. A very large number of other claims, which might in fact, just by assumption, be materially indistinguishable. Just a phrase I'm using for what the Ohio Willowood Standard is. So in your view, to generate the, you had a full opportunity, you got it once, you're all done, even though the burden of persuasion is different, the defendants have to include all the claims in the patent in an IPR petition? All that they can, I think, yes, Your Honor. Well, they couldn't here. I mean, you filed an amended claim, you filed an amended complaint past their due date, as I recall. That's correct. That's why I was saying all that they can. So I think some of these claims, at least, were not available to be IPR'd because the year had passed. Does the board have any, I don't know, procedure for either granting the extra pages or allowing the petitioner to say in extremely short-hand fashion, these other 100 claims are materially the same? Forcing the patent owner to say, oh, no, no, I will now identify which ones are different. Something like what happens in district court where there are a vast number of claims. I forget what the name of the case is that said that district court has authority to say, we're just going to do these claims unless you, the plaintiff, tell me why that group leaves out something significantly different. I'm not aware of that at the board. Perhaps that would evolve if this law changes, as it apparently has. So what you're advocating, essentially, the only way to protect the petitioner, to protect itself from this collateral estoppel, would be to get some sort of stipulation up front that these are the only claims that are going to be asserted? I think that would be possible. And how does, I mean, your friend mentioned, this is more policy than law, I guess, but how this distinction you're seeking that we draw comports with Congress's intent to streamline the procedure for invalidity in the IPR setting and motions for stay or whatever. Doesn't this throw a wrench into that, a decision that would go your way on this? I don't think it's necessarily a wrench, Your Honor. I think it's a logical result of the XY line of cases, for example, which were the same claims. So we don't dispute in our brief that if it's the same claims at the PTAB, you're collaterally estopped at the district court level from asserting them if they were invalidated. The mischief comes, and I think this is a great case for presenting that mischief, is when, sure, opposing counsel says the patent office decided claims of the same scope, of the similar scope, were invalid. Well, let's assume for the sake of argument that these are materially indistinct claims. You recognize that at least some of them are. That's what the ruling you're seeking from us would cover, right? If the claims are different, then yes, they should not be collaterally estopped. If they're not the same claims, if they're not the XY strain of claims, then they should be collaterally estopped. No, I'm talking about something a little different, which is they're not the same claims, but they're materially indistinct. Well, I think that if they're materially indistinct, I think that is an issue that can be litigated at the district court level separately for invalidity under the clear and convincing standard, and that's where the problem is, is that it was a different standard at the PTAB. So with the judge's blurred test between XY and Ohio-Williwood, I'm not even sure which standard is being applied to decide that material indistinctness. And so I think that's the issue, and I think that does have to be left to the district court to decide that. Thank you. Thank you, Your Honors.